# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**KENDALL RAY SMITH**                                              **PLAINTIFF**

**versus**                                  **CIVIL ACTION NO. 2:09cv125-KS-MTP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**                                **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Kendall Ray Smith ("Smith") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits and supplemental security income. The matter is now before the court on the Defendant's Motion to Affirm the Commissioner's Decision [13] and on Smith's Motion for Judgment on the Pleadings [11]. Having considered the pleadings, the transcript of the record, and the applicable law, and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## Procedural History

Smith filed for supplemental security income benefits ("SSI") and disability insurance benefits under the Social Security Act on August 31, 2006. (Tr. 108-116.)[1] The application for benefits indicated that Smith had been unable to work on a regular basis since May 15, 2001.[2] (Tr. 108; 112.) His claims were denied initially on September 8, 2006, and again on March 9,

---

[1] All cites herein to the Transcript ("Tr. \_\_\_\_") are to the certified copy of the Transcript of the Administrative Record, filed with the court under seal. *See* [9]. Specific page numbers ("Tr. **1-3**") refer to the sequential numbers on the lower portion of each page of the record.

[2] The record contains a discrepancy regarding the onset date of Smith's disability. The application for benefits lists May 15, 2001, while at the disability hearing Smith and his attorney give an onset date of August 2006. (Tr. 31; 38-39.)

2007, pursuant to Smith's request for reconsideration. (Tr. 58; 67-72; 108; 112.)

Subsequent to a request from Smith, on September 9, 2008, a hearing was convened before ALJ Katie H. Pierce, who heard testimony from Smith and Kelly R. Hutchins, a vocational expert ("VE"). (Tr. 36-51.) At its conclusion, the ALJ continued the hearing in order to allow time for updated medical records to be obtained and added to the record for consideration prior to making a decision. (Tr. 32-36; 51-52.) After receipt of the additional medical records, on January 30, 2009, the ALJ rendered her decision that Smith was not disabled within the meaning of the Social Security Act. (Tr. 15-26.) Smith then requested review by the Appeals Council on February 18, 2009. (Tr. 14.) The Appeals Council found no basis for review of the decision of the ALJ and, on May 19, 2009, denied Smith's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

Aggrieved by the Commissioner's decision to deny benefits, Smith filed a complaint in this court on July 9, 2009 seeking an order reversing the Commissioner's final decision and awarding him benefits, or remanding the case to the Commissioner for further administrative action as directed by the court.[3] Complaint [1]. The Commissioner answered [8] the complaint denying that Smith is entitled to any relief. The parties having filed dispositive motions pursuant to the Local Standing Order in Social Security Cases [3], the matter is now ripe for decision.

---

[3]The court notes that on January 13, 2010, pursuant to a second application for disability, Smith was found disabled by another ALJ beginning January 31, 2009, because of his impairments of coronary artery disease with unstable angina, adrenal insufficiency, lumbar radiculopathy and depression. *See* Pl.'s Rebuttal [16] at 4. Accordingly, the court finds that, based upon the onset date given in the application for disability, Smith now seeks benefits for the period May 15, 2001 to January 30, 2009. It should also be noted that Smith was incarcerated from January to October of 2007.

## Medical/Factual History

Smith was forty-five years old at the time of the hearing and had an eighth-grade education.[4] (Tr. 27; 36.) His work history includes employment as a mechanic, a truck driver and as a carpenter's assistant. (Tr. 38-39.) He also spent time working in an oilfield. (Tr. 40). Smith testified that his last job was as a driver and mechanic for Watts Wrecker Service. (Tr. 37-38.) He originally alleged disability because of ruptured discs. (Tr. 143; 160.) At the administrative hearing, Smith also alleged disability due to cardiac issues and complications from heat stroke. (Tr. 31-32; 46-47.) The medical portion of Smith's brief is limited to whether his cardiac impairment should form a basis for disability. Pl.'s Brief [12] at 1.

Despite the fact that Smith alleges disability since May 2001, the record contains no medical documentation prior to 2004, at which time Smith told the doctor he had a herniated lumbar disc, and was diagnosed with sciatica.[5] (Tr. 214; 217.) As a result of his continued complaints of lower back pain, Smith was referred to a chiropractor and prescribed medication. (Tr. 211; 213; 215.) His next relevant treatment was in February 2006 when he presented to the emergency room with complaints of chest, neck and back pain. (Tr. 247.) Smith stated that he had been diagnosed with pleurisy a few weeks previously and although he had a history of back pain, he had not sought treatment.[6] (Tr. 247.) At this time, chest x-rays were negative and

---

[4]Although portions of the record state that Smith had a ninth-grade education, he testified that he completed only the eighth grade. (Tr. 36.)

[5]Sciatica is a syndrome characterized by pain radiating from the back into the buttock and/or lower extremity, often caused by protrusion of a lower lumbar disc. *Dorland's Illustrated Medical Dictionary* 1609 (29th ed. 2000).

[6]Pleurisy is an inflammation of the lining of the lungs that causes chest pain. *Dorland's Illustrated Medical Dictionary* 1403 (29th ed. 2000).

Smith was advised to follow up with his doctor for an MRI of his back. (Tr. 248-49.)

On February 7, 2006, Smith was seen by his treating physician, Dr. Charles Griffith, for complaints of chest pain, shortness of breath, fatigue and chronic back pain. (Tr. 364.) Smith specifically denied any issues with depression. (Tr. 365.) Based on his complaints, Dr. Griffith admitted Smith to Wesley Medical Center for testing. (Tr. 366-67.) Following testing which included an EKG, an MRI, and a cardiolite stress test which was negative, Smith was diagnosed with a hiatal hernia, acid reflux, mechanical back pain for which physical therapy was prescribed, and possible hyperthyroidism. (Tr. 338-39; 360.)

The next pertinent treatment occurred when Smith presented to South Mississippi Primary Care of Purvis with complaints of low back pain after moving a tool box three days previously. (Tr. 205.) The nurse practitioner prescribed conservative treatment consisting of medication, the use of a heating pad and two days off of work. (*Id.*) Later in the month, on August 25, 2006, Smith was admitted to Forrest General Hospital with heat exhaustion. (Tr. 227-28.) After findings of dehydration, acute renal failure and rhabdomyolysis, Smith was advised to drink fluids, limit heat exposure and have follow up liver testing. (Tr. 310-11.) Based on a history of shortness of breath and chronic back pain, additional testing was conducted. (Tr. 233-38.) Smith's chest x-ray was normal. (Tr. 233.) An MRI revealed multilevel disc disease in the thoracic area and mild disc disease of the lumbar area. (Tr. 312-17.) Smith was told to avoid heavy lifting and to follow up with a physical medicine doctor. (Tr. 310.) A later record shows that physical therapy was recommended for Smith's back, but he did not comply. (Tr. 262.)

Dr. Elmo Walker conducted a physical examination and consultation of Smith on

November 9, 2006. (Tr. 265.) At this time, Smith cited only ruptured discs as the reason for his alleged disability, stating that he had chest pain, but was unaware of any cardiac disease. (*Id.*) Further, he said he had no history of on-going renal disease, pointing to only one specific incident. (Tr. 266.) Other than some pain when raising his right knee and a lack of full sensitivity in the left hand, Dr. Walker's examination was unremarkable. (Tr. 266-67.)

A comprehensive examination was undertaken by psychologist, Martha D'Ilio, on January 24, 2007. (Tr. 277.) Smith stated that he was entitled to disability benefits because of back problems and a pinched nerve in his right leg. (*Id.*) He also indicated that subsequent to a heat stroke in May or June 2006, his kidneys stopped working. (*Id.*) Dr. D'Ilio noted no problems with motor activity, but saw some evidence of depression, for which Smith was not receiving formal treatment, but was prescribed medication by his treating physician. (Tr. 279; 281.) She found Smith to be capable of performing routine, repetitive tasks; interacting with coworkers; and/or receiving supervision. (Tr. 281.) Dr. D'Ilio also determined that Smith was able to maintain attention and concentration during their interview. (*Id.*)

On June 17, 2008, Smith was seen in the emergency room at Wesley Medical Center where he was again treated for heat exhaustion. (Tr. 391-93.) He denied any changes in urinary frequency and a renal ultrasound was negative. (Tr. 389; 391-92.) Pursuant to complaints of chest pain upon exertion, on July 22, 2008, Smith was advised to follow up with a cardiologist. (Tr. 417.) Smith was admitted to Wesley Medical Center on July 25, 2008, for an evaluation of his chest discomfort. (Tr. 404.) A chest x-ray, ct and pulmonary function study were normal; however, Smith was found to have some soft plaque formation and one plus mitral and tricuspid

insufficiencies.[7] (Tr. 397-99; 402-04.)

Smith was seen at Wesley Medical Group of Purvis on August 21, 2008, at which time he reported being short of breath and feeling heavy "pressure" in his chest for approximately a week. (Tr. 415.) He was urged to go directly to the emergency room. (Tr. 416.) Smith was also given medication refills for his complaints of chronic back pain. (*Id.*) Once at the emergency room, Smith was admitted for a left heart catheterization due to unstable angina. (Tr. 408.) The catheterization revealed 50% stenosis of the first diagonal branch of the LAD and 60-70% stenosis of the left circumflex artery. (*Id.*) Post-surgery testing indicated a left ventricular ejection fraction of over 60%.[8] (*Id.*) At this time, Smith gave a medical history which included chronic lower back pain, degenerative joint disease, major depressive disorder and generalized anxiety disorder. (Tr. 410.)

On September 9, 2008, Smith was hospitalized with complaints of chest pain. (Tr. 430.) Two days later, a second left heart catheterization was performed. (Tr. 428.) Following this procedure, the ejection fraction was noted to be greater than 60%, the left circumflex artery and right coronary artery were free from stenosis and the LAD had a first diagonal branch with 60-70% stenosis. (*Id.*) Smith again presented to the emergency room for chest pain on October 1, 2008. (Tr. 436.) All tests were found to be within normal limits and his chest pain was found to be non-cardiac. (Tr. 436-37.) Significantly, subsequent to a stress test, there was found to be a

---

[7]Mitral insufficiency is the backflow of blood from the left ventricle into the left atrium. Tricuspid insufficiency is the backflow of blood from the right ventricle into the right atrium. *Dorland's Illustrated Medical Dictionary* 1555 (29th ed. 2000).

[8]Ejection fraction is a measurement of the capacity at which the heart is pumping. A normal ejection fraction is 55-70%. Mayo Clinic, http://www.mayoclinic.com/health/ejection-fraction/an00360 (last visited June 23, 2010).

"low probability for inducible ischemia." (Tr. 438-39.) On October 28, 2008, Smith was seen at Wesley Medical Center for chest pain, shortness of breath and high blood pressure. (Tr. 464.) Testing done after admission to the hospital produced results within normal limits. (Tr. 460-63.)

## Burden of Proof

The Social Security Act defines "disability" as "inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Federal regulations provide that disability claims should be evaluated according to a sequential five-step process. 20 C.F.R. § 404.1520 (1986). In *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):
>
> > 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> > 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
> > 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> > 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> > 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and

residual functional capacity must be considered to determine if other work can be performed.

(citations and footnotes omitted). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell*, 862 F.2d at 475.

## Analysis of the Administrative Law Judge

After a hearing and upon considering the testimony and medical records, the ALJ applied the five-step process as found in 20 C.F.R. § 404.1520(b)-(f) and rendered her decision on January 30, 2009.[9] (Tr. 18-26.) At step one, the ALJ found that Smith had not engaged in substantial gainful activity since his alleged onset disability date. (Tr. 20.) She next found that Smith had multi-level degenerative disc disease and coronary artery disease, which are "severe" impairments within the meaning of the Social Security Act. (*Id.*) However, at step three, the ALJ found that Smith's impairments were not "listed impairments" or equivalents thereof such that disability would be presumed. (*Id.*) She further concluded that based on the medical and other submitted evidence, Plaintiff maintained the RFC to perform light work.[10] (Tr. 21.) Additional limitations included the ability to lift and carry 20 pounds only occasionally and 10 pounds frequently; the option to sit, stand or walk at will; occasional climbing, balancing, crouching, kneeling, crawling and performance of fine manipulations with the left hand. (Tr. 21.) The ALJ also noted that Smith should be limited to performing simple, routine tasks. (*Id.*)

---

[9]ALJ Robert Allen signed the decision on behalf of ALJ Pierce.

[10]"Light work" requires either a good deal of walking or standing, or it involves sitting most of the time with some pushing or pulling of arm or leg controls. Light work does not involve the lifting of more than twenty pounds at a time. *See* 20 C.F.R. § 404.1567(b).

Smith testified that since suffering a heat stroke in August 2006, he lacks energy and has memory problems and he has been told he will never return to his pre-heat stroke condition. (Tr. 40-41.) He testified that his back and leg hurt constantly and the prescribed pain medication makes him drowsy. (Tr. 44.) The Plaintiff also said he has a difficult time catching his breath. (Tr. 45.) The ALJ took this testimony into consideration along with all medical records submitted by Smith for review. (Tr. 21-24.) However, the ALJ held that the testimony given by Smith was not entirely credible with regard to the severity of his symptoms or the reason(s) for his disability. (Tr. 24.) Specifically, she found Smith's testimony regarding the intensity, persistence and limiting effects of his symptoms at odds with findings of Dr. Walker and Dr. D'Ilio. (*Id.*) Further, the ALJ determined that the opinions of the treating nurse practitioner and physician were not consistent with the medical evidence as a whole.[11,12] (*Id.*)

The ALJ noted that while Smith's disability allegedly arose in 2001, no medical records were submitted for treatment occurring prior to 2004. (*Id.*) In addition, with few exceptions, all diagnostic testing undergone by Plaintiff was negative (i.e. normal brain scans and chest x-rays showing no acute process) or only mildly positive (i.e. mild degenerative disc disease). (Tr. 24.) It is specifically pointed out by the ALJ that Smith did not follow up with the recommended

---

[11]Nurse Green and Dr. Griffith found that Smith: (1) could sit, stand or walk less than two hours in an eight hour workday, with sitting and standing limited to forty-five minutes at a time and walking limited to less than a block; (2) could not stoop or crouch; (3) required breaks every one to two hours in an eight hour workday; and (4) would miss work three to four times a month. (Tr. 332-37)

[12]*See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987) (citation omitted) (holding that "'the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'")

9

physical therapy. (*Id.*) While not discounting Smith's cardiac condition, the ALJ found that the stenting procedure was successful and caused no complications. (*Id.*)

Based on Plaintiff's RFC, at step four, the ALJ found that Smith could not return to his past work. (Tr. 25.) The ALJ based this finding on the VE's classification of Smith's past jobs as requiring a medium level of exertion. (*Id.*)

At step five, the ALJ found that based on the testimony of the VE and considering Smith's age, educational background, work experience, and RFC, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. 25.) Accordingly, the ALJ concluded that Smith was not disabled. (Tr. 26.)

**Standard of Review**

Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). This court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames,* 707 F.2d at 164 (citations omitted). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates

against" the Commissioner's decision. *Harrell,* 862 F.2d at 475. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citations omitted).

## The Issues

Smith makes two claims of error by the ALJ in the handling of his claim. First, Smith argues that the ALJ erred at step three of the sequential analysis by not finding that his cardiovascular impairment meets or equals Section 4.04C. Pl.'s Brief [12] at 1. Next, Smith claims that the ALJ erred in holding the testimony of the VE to be consistent with Social Security Ruling ("SSR") 00-4p at step five of the sequential analysis. (*Id.*) For the reasons which follow, the undersigned finds no merit to either argument.

**Issue No. 1 – The ALJ's determination that Smith's cardiovascular impairment does not meet or equal Section 4.04C is accurate.**

At step three of the sequential evaluation process a plaintiff must prove by objective medical evidence that his impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders*, 914 F.2d at 619, citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92; 20 C.F.R. § 404.1526(a) (claimant bears the burden of showing medical findings that he meets each element of the listing). In this instance, Smith maintains that he has "an impairment which meets the duration requirement as is listed in appendix 1 or is equal to a listed impairment(s) . . ." 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Pl's Brief [12] at 11.

Specifically, Smith argues that he has ischemic heart disease with chest pain as described in 4.00E3-4.00E7, and further, that as set forth in § 4.04C, his cardiac issues constitute a listed

impairment for purposes of disability. Pl's Brief [12] at 11. However, he fails to take into account that a determination under § 4.04C is not called for when there is a "timely normal drug-induced stress test." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00E9(g)[13]; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C. On October 3, 2008, after his heart catheterizations, Smith underwent a drug-induced stress test. (Tr. 438-39.) The stress test showed no abnormalities and the doctor indicated that there was a "low probability for inducible ischemia." (*Id.*) Given the normal stress test, substantial evidence exists in the record to support the Commissioner's finding that Plaintiff's cardiac disease did not constitute a listed impairment.

Although this issue should be disposed of on the basis previously set forth, for the sake of thoroughness, and since the parties have chosen to address these matters, whether Smith's cardiac issues constitute a listed impairment under § 4.04C is also evaluated. In order to prove disability for purposes of § 4.04C, claimant must provide

    1. Angiographic evidence showing:

    a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

    b. 70 percent or more narrowing of another nonbypassed coronary artery; or

    c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

    d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

---

[13] § 4.00E9(g) states:

We will use 4.04C only when you have symptoms due to myocardial ischemia as described in §§ 4.00E3-4.00E7 while on a regimen of prescribed treatment, you are at risk for exercise testing (see § 4.00C8), **and** we do not have a timely ETT or a timely normal drug-induced stress test for you. (Emphasis added.)

e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C.

The angiographic evidence shows that in August 2008, Smith was admitted for a left heart catheterization due to unstable angina. (Tr. 408.) The catheterization revealed 50% stenosis of the first diagonal branch of the LAD and 60-70% stenosis of the left circumflex artery. (*Id.*) Post-surgery testing indicated a left ventricular ejection fraction of over 60% with "no residual stenosis or dissection."[14] (*Id.*) The doctor stated the procedure was successful. (Tr. 409.) On September 9, 2008, Smith was hospitalized with complaints of chest pain. (Tr. 430.) Two days later, a second left heart catheterization was performed. (Tr. 428.) Following this procedure, the ejection fraction was noted to be greater than 60%, the left circumflex artery and right coronary artery were free from stenosis and the LAD had a first diagonal branch with 60-70% stenosis. (*Id.*)

Because Plaintiff's left circumflex and right coronary arteries were determined to be completely free from stenosis, impairment of these arteries no longer constitutes grounds for potential disability under § 4.04C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00E9(h). *See also Lovelace v. Bowen*, 813. F.2d 55, 59 (5th Cir. 1989) (holding that a medical condition which is remedied through treatment is not disabling.) There must be *at least* 70% stenosis to satisfy § 4.04C1, and, in this instance, there is only 60-70% stenosis of the first diagonal branch of the LAD. (Tr. 428.) Consequently, Smith's angiographic evidence is insufficient for purposes of

---

[14]See footnote 7, *supra*.

establishing the existence of a listed impairment.  At this point, it is unnecessary to move on to the second step of § 4.04C given that Smith cannot meet the criteria set forth in the first step.  However, even if § 4.04C were applicable[15], and even assuming that the 60-70% stenosis at the first diagonal branch of the LAD met the "at least 70%" requirement, Smith would only be over the first hurdle of 4.04C.

The second hurdle (not fully addressed by Smith) is 4.04C2 which requires "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."  Based on the medical evidence before her, the ALJ specifically found Smith able to independently care for himself, including being able to undertake routine, repetitive tasks.  (Tr. 23.)  The ALJ noted that Smith's evaluation by Dr. D'ilio found him only mildly restricted in his activities of daily living as he was "able to care for his personal needs, take medication, cook, wash dishes[,] do the laundry," check his mail, go to the store and attend doctor's appointments independently.  (Tr. 20; 23.)  It was further held that the physical restrictions imposed by the treating nurse practitioner and physician were not supported by the medical evidence.  (Tr. 24.)  Thus, the Commissioner's finding that Plaintiff's cardiac disease did not constitute a listed impairment under § 4.04C is supported by substantial evidence.

**Issue No. 2 – The ALJ did not err in holding the testimony of the VE to be consistent with Social Security Ruling ("SSR") 00-4p.**

Under step five, once a claimant has proved he is unable to perform his past work because of a severe impairment, in order to establish disability the Commissioner must prove that the claimant is able to perform other "substantial gainful work which exists in the national

---

[15]It is not applicable as set forth *supra*.

economy." 42 U.S.C. § 423(d)(2)(A); *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir. 1986). In this instance, the ALJ found that Smith maintained the RFC to perform light work, with the additional limitations that he would need to change positions hourly, could only climb, balance, stoop, kneel, crouch or crawl occasionally, and could only perform simple, routine tasks. (Tr. 50.) The ALJ also held that Plaintiff should be limited to only occasional fine manipulation with his left hand. (Tr. 51.) Smith argues that the ALJ failed to resolve conflicts between the testimony of the VE and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations ("SOT"), in accordance with SSR 00-4p. Pl's Brief [12] at 14. Specifically, Smith maintains that the ALJ's finding of an RFC for "light work," with the additional limitation of "occasional manipulative limitation with the left hand" creates an inconsistency which, compounded by the failure of the ALJ to resolve this inconsistency, leaves the requirements of step five unsatisfied. (*Id.*)

An ALJ is permitted to rely on VE testimony as well as the DOT. *See* 20 C.F.R. §§ 404.1566(d),(e); 416.966(d),(e). However, when a VE "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VE evidence and information provided in the DOT." *Scott v. Astrue*, No. 3:09cv39-SSA, 2010 WL 2243296, at *4 (N.D. Miss. June 1, 2010). If there is a conflict, the ALJ must resolve the conflict before relying on the VE's testimony and must explain his determination of the resolution of the conflict. S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

Smith maintains that the VE's testimony conflicted with the DOT. Pl's Brief [12] at 14. He argues that, according to the DOT, two of the jobs in question (bench assembler and laundry

15

folder) require "frequent" or "constant reaching, handling and fingering" which is at odds with his ability to withstand only "occasional manipulative limitation with the left hand." Pl's Brief [12] at 14. Pursuant to questioning by the ALJ, the VE testified that the Plaintiff could perform any of three jobs (bench assembler, laundry folder and gate tender) despite his physical limitations and that her testimony was in keeping with the DOT. (Tr. 50-51.)

The court notes that it is not apparent that there is actually a conflict between the VE's testimony and the DOT. The DOT does state that two of the three jobs listed require "frequent" or "constant reaching, handling and fingering." *See* DOT (4th ed. 1991) (bench assembler, 706.684-022, *available at* 1991 WL 679050; laundry folder, 302.685-010, *available at* 1991 WL 672657). However, the definitions provided in the DOT for these jobs do not indicate whether or how often Smith would be required to use his left hand. Thus, at most there is an "implied or indirect conflict" between the DOT and the VE's testimony, which does not provide a basis for reversal of the ALJ's decision. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) (noting that "all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."). Further, there was a third job that the VE testified Smith was qualified to undertake - gate tender, 372.667-030. This job requires only occasional reaching and handling with no fingering. *See* DOT (4th ed. 1991) (gate tender, 372.667-030, *available at* 1991 WL 673099). Smith's ability to meet the requirements of even one occupation for which there are a significant number of jobs in the national economy precludes a finding of disability. 29 C.F.R. §§ 404.1566(b), 416.966(b). As Plaintiff's limitations do not keep him from possessing the capabilities needed to perform the job of gate tender as set forth in the DOT, any potential conflict pertaining to the other two jobs

16

is irrelevant and the decision of the ALJ is supported by the record. *See also Moreland v. Astrue*, No. 1:08cv82-SAA, 2009 WL 3246694, at *4 (N.D. Miss. Sept. 30, 1999) (holding that where there existed one job which could be performed by the plaintiff, the ALJ's decision finding him not to be disabled was supported by substantial evidence).

Moreover, the Plaintiff failed to pursue the alleged conflict at the hearing. "[W]hen the conflict was not deemed sufficient to merit adversarial development in the administrative hearing," after having the benefit of reviewing the record, a claimant should not be allowed to present that same conflict as reversible error. *Carey*, 230 F.3d at 146-47. In *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) the Fifth Circuit held that where the plaintiff failed to cross-examine the VE at the hearing, he was precluding from arguing that issue on appeal. More recently, it has been held that where the claimant's attorney did not cross-examine the VE as to the classification of jobs at the hearing, the claimant was barred from arguing on appeal that the VE erroneously concluded he could perform work in the national economy. *Barratt v. Astrue*, No. 07-51067, 2008 WL 2325636, at *2 (5th Cir. June 6, 2008). *See also Haas v. Barnhart*, 91 Fed.Appx. 942, 947-48 (5th Cir. 2004) (finding that plaintiffs waive potential conflicts and issues related to uncertainty regarding DOT job numbers by failing to investigate the issue at the hearing). At Smith's hearing, his attorney was asked whether she had any questions for the VE, and she indicated that she did not. (Tr. 542.) Pursuant to applicable case law as cited above, the court finds that Smith should not be permitted to raise this issue for the first time on appeal.[16]

---

[16]In addition, it is unclear to the court why the ALJ undertook to place a limitation of occasional fine manipulation with the left hand on Smith and the ALJ gave no basis for this limitation. Although it is noted that Plaintiff sustained a mild, four centimeter laceration to his

The VE testified that Smith could perform jobs in the national economy despite his vocational factors, his RFC for light work and the additional exertional and non-exertional limitations as specifically set forth by the ALJ. (Tr. 50-51). The VE also testified that his findings were consistent with the DOT. (*Id.*) Accordingly, the ALJ's holding was not contrary to or inconsistent with the regulations set forth above, as claimed by Smith. *See* 20 C.F.R. §§ 416.969a(d), 404.1569a(d), 404.1569; 20 C.F.R. Part 404, Subpart P, Appx. 2; S.S.R. 83-12, 1983 WL 31253, at *1-*2; S.S.R. 83-14, 1983 WL 31254, at *1-*5; *see also Carey*, 230 F.3d at 146 (holding that where there is an implied or indirect conflict between the VE's testimony and the DOT, the "ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so").

The court finds that there exists substantial evidence in the record to support the Commissioner's findings that Smith had the RFC to perform light work, with the additional limitations identified above, and that there is a significant number of jobs in the national economy that he could perform. (Tr. 16-24.)

## Conclusion/Recommendations

---

left index finger on February 10, 2008, there is no indication in the record that the cut caused any permanent physical limitation of the left hand. (Tr. 376-81.) Nowhere in the record does Plaintiff state that he is seeking disability due to physical problems with his hands or arms, nor does he voice that activity with his left hand or arm is limited in any manner.

The record contains voluminous medical records pertaining to Smith; however, to the best of the court's knowledge, the medical records are devoid of any finding of physical limitation (specifically with regard to reaching, handling and/or fingering) as was set forth by the ALJ. Further, the Plaintiff has not pointed to any documentation which shows otherwise. In fact, Smith denied "any numbness or tingling to upper extremities" on September 4, 2008, and had no complaints regarding his extremities during his last hospital stay in October 2008. (Tr. 413; 464-66.) To the extent there is no physical limitation with regard to Smith's left hand, all three of the jobs listed by the VE are appropriate for the Plaintiff.

The undersigned agrees with the Commissioner's decision that Smith is not entitled to disability benefits under the Social Security Act and finds that the decision is supported by substantial evidence and utilizes correct legal standards. It is, therefore, the recommendation of the undersigned that the Commissioner's motion to affirm [13] be granted and the denial of benefits affirmed. The undersigned further recommends that Smith's motion for judgment on the pleadings [12] be denied.

## Notice of Right to Object

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 13th day of July, 2010.

s/ Michael T. Parker
United States Magistrate Judge