IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**KENDALL RAY SMITH**

**VS.**                                                      **CIVIL ACTION NO. 2:09cv125-KS-MTP**

**MICHAEL J. ASTRUE**
**Commissioner of Social Security**

### ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION AND AFFIRMING THE DECISION OF THE COMMISSIONER, ETC.

This cause is before the Court on Defendant's Motion to Affirm Commissioner's Decision [13] and Plaintiff's Motion for Judgment on the Pleadings [11]. The Report and Recommendation of the Magistrate Judge [17] has been filed and the Objections thereto have been filed by the Plaintiff [18]. The Court has considered the above, the record herein, the applicable law and being fully advised in the premises, finds that the Commissioner's decision should be affirmed and that the Motion for Judgment on the Pleadings filed by the Defendant should be denied for the following reasons.

### I.  PROCEDURAL HISTORY

Smith filed for supplemental security income benefits ("SSI") and disability insurance benefits under the Social Security Act on August 31, 2006. (Tr. 108-116.)[1] The application for benefits indicated that Smith had been unable to work on a regular basis since May 15, 2001.[2]

---

[1] All cites herein to the Transcript ("Tr. ____") are to the certified copy of the Transcript of the Administrative Record, filed with the court under seal. *See* [9]. Specific page numbers ("Tr. **1-3**") refer to the sequential numbers on the lower portion of each page of the record.

[2] The record contains a discrepancy regarding the onset date of Smith's disability. The application for benefits lists May 15, 2001, while at the disability hearing Smith and his attorney

(Tr. 108; 112.)  His claims were denied initially on September 8, 2006, and again on March 9, 2007, pursuant to Smith's request for reconsideration.  (Tr. 58; 67-72; 108; 112.)

Subsequent to a request from Smith, on September 9, 2008, a hearing was convened before ALJ Katie H. Pierce, who heard testimony from Smith and Kelly R. Hutchins, a vocational expert ("VE").  (Tr. 36-51.)  At its conclusion, the ALJ continued the hearing in order to allow time for updated medical records to be obtained and added to the record for consideration prior to making a decision.  (Tr. 32-36; 51-52.)  After receipt of the additional medical records, on January 30, 2009, the ALJ rendered her decision that Smith was not disabled within the meaning of the Social Security Act.  (Tr. 15-26.)  Smith then requested review by the Appeals Council on February 18, 2009.  (Tr. 14.)  The Appeals Council found no basis for review of the decision of the ALJ and, on May 19, 2009, denied Smith's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3.)

Aggrieved by the Commissioner's decision to deny benefits, Smith filed a complaint in this court on July 9, 2009 seeking an order reversing the Commissioner's final decision and awarding him benefits, or remanding the case to the Commissioner for further administrative action as directed by the court.[3]  Complaint [1].  The Commissioner answered [8] the complaint denying that Smith is entitled to any relief.  The parties having filed dispositive motions

---

give an onset date of August 2006.  (Tr. 31; 38-39.)

[3]The court notes that on January 13, 2010, pursuant to a second application for disability, Smith was found disabled by another ALJ beginning January 31, 2009, because of his impairments of coronary artery disease with unstable angina, adrenal insufficiency, lumbar radiculopathy and depression.  *See* Pl.'s Rebuttal [16] at 4.  Accordingly, the court finds that, based upon the onset date given in the application for disability, Smith now seeks benefits for the period May 15, 2001 to January 30, 2009.  It should also be noted that Smith was incarcerated from January to October of 2007.

pursuant to the Local Standing Order in Social Security Cases [3], the matter is now ripe for decision.

## Medical/Factual History

Smith was forty-five years old at the time of the hearing and had an eighth-grade education.[4] (Tr. 27; 36.) His work history includes employment as a mechanic, a truck driver and as a carpenter's assistant. (Tr. 38-39.) He also spent time working in an oilfield. (Tr. 40). Smith testified that his last job was as a driver and mechanic for Watts Wrecker Service. (Tr. 37-38.) He originally alleged disability because of ruptured discs. (Tr. 143; 160.) At the administrative hearing, Smith also alleged disability due to cardiac issues and complications from heat stroke. (Tr. 31-32; 46-47.) The medical portion of Smith's brief is limited to whether his cardiac impairment should form a basis for disability. Pl.'s Brief [12] at 1.

Despite the fact that Smith alleges disability since May 2001, the record contains no medical documentation prior to 2004, at which time Smith told the doctor he had a herniated lumbar disc, and was diagnosed with sciatica.[5] (Tr. 214; 217.) As a result of his continued complaints of lower back pain, Smith was referred to a chiropractor and prescribed medication. (Tr. 211; 213; 215.) His next relevant treatment was in February 2006 when he presented to the emergency room with complaints of chest, neck and back pain. (Tr. 247.) Smith stated that he had been diagnosed with pleurisy a few weeks previously and although he had a history of back

---

[4]Although portions of the record state that Smith had a ninth-grade education, he testified that he completed only the eighth grade. (Tr. 36.)

[5]Sciatica is a syndrome characterized by pain radiating from the back into the buttock and/or lower extremity, often caused by protrusion of a lower lumbar disc. *Dorland's Illustrated Medical Dictionary* 1609 (29th ed. 2000).

pain, he had not sought treatment.[6] (Tr. 247.) At this time, chest x-rays were negative and Smith was advised to follow up with his doctor for an MRI of his back. (Tr. 248-49.)

On February 7, 2006, Smith was seen by his treating physician, Dr. Charles Griffith, for complaints of chest pain, shortness of breath, fatigue and chronic back pain. (Tr. 364.) Smith specifically denied any issues with depression. (Tr. 365.) Based on his complaints, Dr. Griffith admitted Smith to Wesley Medical Center for testing. (Tr. 366-67.) Following testing which included an EKG, an MRI, and a cardiolite stress test which was negative, Smith was diagnosed with a hiatal hernia, acid reflux, mechanical back pain for which physical therapy was prescribed, and possible hyperthyroidism. (Tr. 338-39; 360.)

The next pertinent treatment occurred when Smith presented to South Mississippi Primary Care of Purvis with complaints of low back pain after moving a tool box three days previously. (Tr. 205.) The nurse practitioner prescribed conservative treatment consisting of medication, the use of a heating pad and two days off of work. (*Id.*) Later in the month, on August 25, 2006, Smith was admitted to Forrest General Hospital with heat exhaustion. (Tr. 227-28.) After findings of dehydration, acute renal failure and rhabdomyolysis, Smith was advised to drink fluids, limit heat exposure and have follow up liver testing. (Tr. 310-11.) Based on a history of shortness of breath and chronic back pain, additional testing was conducted. (Tr. 233-38.) Smith's chest x-ray was normal. (Tr. 233.) An MRI revealed multilevel disc disease in the thoracic area and mild disc disease of the lumbar area. (Tr. 312-17.) Smith was told to avoid heavy lifting and to follow up with a physical medicine doctor.

---

[6]Pleurisy is an inflammation of the lining of the lungs that causes chest pain. *Dorland's Illustrated Medical Dictionary* 1403 (29th ed. 2000).

(Tr. 310.)  A later record shows that physical therapy was recommended for Smith's back, but he did not comply.  (Tr. 262.)

Dr. Elmo Walker conducted a physical examination and consultation of Smith on November 9, 2006.  (Tr. 265.)  At this time, Smith cited only ruptured discs as the reason for his alleged disability, stating that he had chest pain, but was unaware of any cardiac disease.  (*Id.*) Further, he said he had no history of on-going renal disease, pointing to only one specific incident.  (Tr. 266.)  Other than some pain when raising his right knee and a lack of full sensitivity in the left hand, Dr. Walker's examination was unremarkable.  (Tr. 266-67.)

A comprehensive examination was undertaken by psychologist, Martha D'Ilio, on January 24, 2007.  (Tr. 277.)  Smith stated that he was entitled to disability benefits because of back problems and a pinched nerve in his right leg.  (*Id.*)  He also indicated that subsequent to a heat stroke in May or June 2006, his kidneys stopped working.  (*Id.*)  Dr. D'Ilio noted no problems with motor activity, but saw some evidence of depression, for which Smith was not receiving formal treatment, but was prescribed medication by his treating physician.  (Tr. 279; 281.)  She found Smith to be capable of performing routine, repetitive tasks; interacting with coworkers; and/or receiving supervision.  (Tr. 281.)  Dr. D'Ilio also determined that Smith was able to maintain attention and concentration during their interview.  (*Id.*)

On June 17, 2008, Smith was seen in the emergency room at Wesley Medical Center where he was again treated for heat exhaustion.  (Tr. 391-93.)  He denied any changes in urinary frequency and a renal ultrasound was negative.  (Tr. 389; 391-92.)  Pursuant to complaints of chest pain upon exertion, on July 22, 2008, Smith was advised to follow up with a cardiologist.  (Tr. 417.)  Smith was admitted to Wesley Medical Center on July 25, 2008, for an

evaluation of his chest discomfort. (Tr. 404.) A chest x-ray, ct and pulmonary function study were normal; however, Smith was found to have some soft plaque formation and one plus mitral and tricuspid insufficiencies.[7] (Tr. 397-99; 402-04.)

Smith was seen at Wesley Medical Group of Purvis on August 21, 2008, at which time he reported being short of breath and feeling heavy "pressure" in his chest for approximately a week. (Tr. 415.) He was urged to go directly to the emergency room. (Tr. 416.) Smith was also given medication refills for his complaints of chronic back pain. (*Id.*) Once at the emergency room, Smith was admitted for a left heart catheterization due to unstable angina. (Tr. 408.) The catheterization revealed 50% stenosis of the first diagonal branch of the LAD and 60-70% stenosis of the left circumflex artery. (*Id.*) Post-surgery testing indicated a left ventricular ejection fraction of over 60%.[8] (*Id.*) At this time, Smith gave a medical history which included chronic lower back pain, degenerative joint disease, major depressive disorder and generalized anxiety disorder. (Tr. 410.)

On September 9, 2008, Smith was hospitalized with complaints of chest pain. (Tr. 430.) Two days later, a second left heart catheterization was performed. (Tr. 428.) Following this procedure, the ejection fraction was noted to be greater than 60%, the left circumflex artery and right coronary artery were free from stenosis and the LAD had a first diagonal branch with 60-70% stenosis. (*Id.*) Smith again presented to the emergency room for chest pain on October 1,

---

[7]Mitral insufficiency is the backflow of blood from the left ventricle into the left atrium. Tricuspid insufficiency is the backflow of blood from the right ventricle into the right atrium. *Dorland's Illustrated Medical Dictionary* 1555 (29th ed. 2000).

[8]Ejection fraction is a measurement of the capacity at which the heart is pumping. A normal ejection fraction is 55-70%. Mayo Clinic, http://www.mayoclinic.com/health/ejection-fraction/an00360 (last visited June 23, 2010).

2008.  (Tr. 436.)  All tests were found to be within normal limits and his chest pain was found to be non-cardiac.  (Tr. 436-37.)  Significantly, subsequent to a stress test, there was found to be a "low probability for inducible ischemia."  (Tr. 438-39.)  On October 28, 2008, Smith was seen at Wesley Medical Center for chest pain, shortness of breath and high blood pressure.  (Tr. 464.)  Testing done after admission to the hospital produced results within normal limits.  (Tr. 460-63.)

## II.  ISSUES

There are two claims of error made by Plaintiff. They are as follows:

**Issue No. 1: Plaintiff argues that the ALJ erred at Step 3 of the sequential analysis by not finding that Smith's cardiovascular impairment meets or equals § 4.04 (C); and**

**Issue No. 2: Plaintiff claims that the ALJ erred in holding the testimony of the vocational expert to be consistent with Social Security Ruling 00-4P at Step 5 of the sequential analysis.**

## III.  STANDARD OF REVIEW

When a party objects to a Report and Recommendation this Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  See also *Longmire v. Gust*, 921 F.2d 620, 623 (5th Cir. 1991) (Party is "entitled to a *de novo* review by an Article III Judge as to those issues to which an objection is made.") Such review means that this Court will examine the entire record and will make an independent assessment of the law. The Court is not required, however, to reiterate the findings and conclusions of the Magistrate Judge. *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) nor need it consider objections that are frivolous,

conclusive or general in nature.  *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1997).  No factual objection is raised when a petitioner merely reurges arguments contained in the original petition.  *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993).

## IV.  PLAINTIFF'S OBJECTIONS AND ANALYSIS

The parties are aware that this Court is to determine whether or not the Commissioner's decision is supported by substantial evidence and, if it is, then this Court must affirm the decision of the Commissioner.

Two issues presented by Plaintiff are addressed in the objections.

**Objection No. 1:  Plaintiff alleges that he should have been found disable at Step 3 of the sequential analysis because his medical condition, even though it was not a listed impairment, was equal to a listing.  He alleges an unstable angina equals § 4.04 (C) of the cardiovascular listings at 20 C.F.R., 404, sub pt. P, app. 1.  Plaintiff further alleges that the Report and Recommendation of stress testing is incomplete.**

It is uncontroverted that the Plaintiff had heart issues.  The Report and Recommendation went through the issues, as well as the requirements that Plaintiff must prove to establish disability.  The Administrative Law Judge concluded that based on the medical and other evidence, including the heart issues, that Plaintiff maintained a residual functional capacity to perform light work.  In arriving at this decision she found that the testimony given by the Plaintiff was not entirely credible in regard to the severity of his symptoms or the reasons for his disability. Specifically, she found Plaintiff's testimony regarding the intensity, persistence, and limited effect of his symptoms at odds with the findings of Dr. Walker and Dr. D'Ilio.  The ALJ further found that the opinions of the treating nurse practitioner and physician were not

consistent with the medical evidence as a whole.

The question is not whether the Plaintiff is disabled today, but whether he was disabled during the relevant period claimed in this complaint. 20 C.F.R. § 416.926 addresses medical equivalents[9]. Medical equivalence can be found in three ways. At best, the testimony was conflicting and following the analysis by the Administrative Law Judge and a thorough review of the medical conditions, she found that the condition of Plaintiff was not medically equivalent to a listed condition. This Court has reviewed the findings and the basis for the findings and it is the opinion of this Court that the Commissioner's finding that the cardiac disease did not constitute a listed impairment under § 4.04(C), is supported by substantial evidence. Therefore, this Court finds that Objection No. 1 is without merit.

**Objection No. 2: The ALJ erred in holding the testimony to be consistent with Social Security Ruling 00-4P.**

The Administrative Law Judge found that the Plaintiff maintained residual functional capacity for light work with certain conditional limitations. Additionally, she found that there were jobs in the national economy that Plaintiff was capable of performing. At the trial the VE was not cross examined about this alleged conflict and the Magistrate Judge found that there is not an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*. The Report and Recommendation discusses the requirements of the jobs testified to by the VE and finds that, even assuming that the Plaintiff's position is correct, that there is still one job that is available that Plaintiff could perform. Based on all of the evidence

---

[9] (a) What is medical equivalence? Your impairment(s) is medically equivalent to a listed impairment in appendix 1, sub part P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment.

before the Court, this Court finds that there is substantial evidence in the record to support the Commissioner's finding that Smith had the RFC to perform light work with the additional limitation identified in the Report and Recommendation, and that there is a significant number of jobs in the national economy that he could perform. For that reason, this Court finds that this objection is without merit.

## IV.  CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the objections.  For the reasons set forth above, this Court concludes that Petitioner's Objections lack merit and should be overruled. The Court further concludes that the Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves and adopts the Magistrate Judges's factual findings and legal conclusions contained in the Report and Recommendation. Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. § 636(b)(1) and that Defendant's Motion to Confirm Commissioner's Decision should be **affirmed** and that Smith's Motion for Judgment on the Pleadings [11] should be **denied.**

SO ORDERED this, the <u>4th</u>  day of <u>November, 2010.</u>

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE
